UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New
York City Fire Department,

No. 21 Civ. 6586 (KAM)(CP)

Plaintiffs,

- against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, JOHN
DOE #1-10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual
capacities,

Defendants.

----------------------------------------------------------------------- x

## DEFENDANTS NEW YORK CITY FIRE DEPARTMENT AND DANIEL NIGRO'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**GEORGIA M. PESTANA**
Corporation Counsel of the City of New York
Attorney for Defendants FDNY and Nigro
100 Church Street
New York, New York 10007

Of counsel:   Andrea O'Connor
Ivan Mendez

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ...................................................  .............................................. 1

STATEMENT OF FACTS ................................................................ 5

ARGUMENT ................................................................................................................. 12

     A.    PLAINTIFFS FAIL TO NAME NECESSARY PARTIES ................................. 12

     A.    PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE DC 37 AGREEMENT ........................................................ 13

     B.    PLAINTIFFS SEEK A MANDATORY INJUNCTION, AND FAIL TO MEET THE ASSOCIATED BURDEN ...................................... 14

     C.    PLAINTIFFS DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION ........................................................... 15

     D.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM ................................. 16

     E.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ................................................................................................. 21

     F.    THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS .................................................. 28

     G.    AN INJUNCTION IS NOT IN THE PUBLIC INTEREST ................................. 29

CONCLUSION .............................................................................................................. 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

14 Penn Plaza LLC v. Pyett,
    556 U.S. 247 (2009)..................................................................................14

Abdul Wali v. Coughlin,
    754 F.2d 1015 (2d Cir. 1985)..................................................................14

Adrian v. Bd. of Ed.,
    92 A.D.3d 1272 (4th Dep't 2012), leave to appeal granted, 19 N.Y.3d 804
    (2012)..................................................................................................23, 24

Almontaser v. N.Y. City Dep't of Educ.,
    519 F.3d 505 (2d Cir. 2008)....................................................................16

Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist.,
    435 N.Y.S.2d 793 (2d Dep't 1981), aff'd 55 N.Y.2d 912 (1982) ...........14

Broecker, et al. v. New York City Department of Education, et al.,
    Docket No. 21 CV 6387(KAM)(LB) ...............................4, 15, 18, 20, 29

Brown & Williamson Tobacco Corp. v. Engman,
    527 F.2d 1115 (2d Cir. 1975)..................................................................28

Brown v. Bd. of Educ.,
    2009 N.Y. Misc. LEXIS 5475 (Sup. Ct. N.Y. Co. July 22, 2009)...........23

Buckley v. N.Y. & Presbyterian Hosp.,
    No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21,
    2021) ........................................................................................................19

C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
    2009 NY Slip Op 31687(U) (Sup. Ct., N.Y. Co. 2009)......................23, 24

Candelario v. City of New York,
    539 Fed. App'x 17 (2d Cir. 2013)............................................................13

Capul v. City of N.Y.,
    No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727 (S.D.N.Y. May 27,
    2020), aff'd 832 Fed. App'x. 766 (2d Cir. 2021) ...................................25

Citibank, N.A. v. Citytrust,
    756 F.2d 273 (2d Cir. 1985).................................................15, 16, 17, 18

City School District v. McGraham,
    17 N.Y.3d 917 (2011) .................................................................................24

Cornejo v. Bell,
    592 F.3d 121 (2d Cir. 2010).........................................................................21

Dechberry v. N.Y.C. Fire Dep't,
    124 F. Supp. 3d 131 (E.D.N.Y. 2015) .........................................................21

Doninger v. Niehoff,
    527 F.3d 41 (2d Cir. 2008)...........................................................................16

Donohue v. Mangano,
    886 F. Supp. 2d 126 (E.D.N.Y. 2012) .........................................................19

E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec. Indus.,
    164 F.3d 89 (2d Cir. 1998)...........................................................................20

Faiveley Transp. Malmo AB v. Wabtec Corp.,
    559 F.3d 110 (2d Cir. 2009).........................................................................16

Felix v. Dep't of Citywide Admin. Servs.,
    3 N.Y.3d 498 (2004) ....................................................................................24

Ford v. Reynolds,
    316 F.3d 351 (2d Cir. 2003).........................................................................19

Guitard v. United States Sec'y of Navy,
    967 F.2d 737 (2d Cir. 1992).........................................................................19

Holt v. Continental Group,
    708 F.2d 87 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ...............19

Impax Media Inc. v. Northeast Adver. Corp.,
    No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. Jan. 10, 2018)...........................16

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)...........................................................................21

Jayaraj v. Scappini,
    66 F.3d 36 (2d Cir. 1995).............................................................................21

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990)......................................................................17, 18

Kane v. de Blasio,
    21 Civ. 7863 (S.D.N.Y.) (VEC)..................................................................3, 8

Keil v. The City of New York, et al.,
   21 Civ. 8773 (SDNY)(VEC)................................................................3, 8

Le Sportsac, Inc. v. Dockside Research, Inc.,
   478 F. Supp. 602 (S.D.N.Y. 1979) ...............................................................17

MacFall v. City of Rochester,
   495 F. App'x 158 (2d Cir. 2012) ...........................................................21, 22

Maniscalco v. N.Y. City Dept. of Educ.,
   No. 21 Civ.5055 (E.D.N.Y.) (BMC).....................................................3, 8

Maniscalco v. N.Y. City Dept. of Educ.,
   No. 21-cv-5055 (E.D.N.Y.) ...............................................................8

Martz v. Inc. Vill. of Valley Stream,
   22 F.3d 26 (2d Cir. 1994)...............................................................22

McPherson v. New York City Dep't of Educ.,
   457 F.3d 211 (2d Cir. 2006)...............................................................22

Moore v. Consol. Edison Co. of N.Y., Inc.,
   409 F.3d 506 (2d Cir. 2005)...............................................................19

N.Y.C. Mun. Labor Comm. v. City of N.Y.,
   2021 NY Slip Op 21260 (Sup. Ct.)...............................................................20

Narumanchi v. Bd. of Trustees of Conn. State Univ.,
   850 F.2d 70 (2d Cir. 1988)...............................................................25

New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82
   v. Cuomo,
   64 N.Y.2d 233 (1984) ...............................................................22

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
   14 N.Y.3d 275 (2010) ...............................................................24

Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.,
   697 F.3d 209 (2d Cir. 2012)...............................................................20

O'Connor v. Board of Education,
   48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008) ................................23, 24

Olabopo v. Gomes,
   2016 U.S. Dist. LEXIS 134521 (E.D.N.Y. September 28, 2016)......................................13, 14

Patsy v. Bd. of Regents of Fla.,
   457 U.S. 496 (1982).................................................................25

<u>Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio,</u>
<u>et al.</u>,
    Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.) ...................................................3

<u>Roman Catholic Diocese v. Cuomo</u>,
    141 S. Ct. 63 (2020)............................................................................................28

<u>Sampson v. Murray</u>,
    415 U.S. 61 (1974).......................................................................................17, 18

<u>Score, Inc. v. Cap Cities/ABC, Inc.</u>,
    724 F. Supp. 194 (S.D.N.Y. 1989) .......................................................................17

<u>In the matter of the Application of Andrew Ansbro, as President of the Uniformed</u>
    <u>Firefighters Association v. de Blasio, et al.</u>,
    Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) .................................................3, 11

<u>The New York City Municipal Labor Committee ("MLC"), et al. v. The City of</u>
    <u>New York, et al.</u>,
    Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ..........................................3, 8, 20

<u>Tom Doherty Assocs. v. Saban Entm't, Inc.</u>,
    60 F.3d 27 (2d Cir. 1995)...............................................................................15, 16

<u>Tough Traveler, Ltd. v. Outbound Prod.</u>,
    60 F.3d 964 (2d Cir. 1995)...................................................................................17

<u>Trump v. Deutsche Bank AG</u>,
    943 F.3d 627 (2d Cir. 2019), <u>rev'd on other grounds</u>, __U.S.__, 140 S.Ct.
    2019 (2020) ........................................................................................................27

<u>We the Patriots USA, Inc. v. Hochul</u>,
    Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880 (2d Cir. Nov. 4, 2021) ....................23

<u>Weinberger v. Romero-Barcelo</u>,
    456 U.S. 305 (1982)............................................................................................27

<u>Winter v. Natural Res. Def. Council, Inc.</u>,
    555 U.S. 7 (2008)..........................................................................................16, 27

<u>Wisdom Imp. Sales Co. v. Labatt Brewing Co.</u>,
    339 F.3d 101 (2d Cir. 2003).................................................................................19

<u>Zinermon v. Burch</u>,
    494 U.S. 113 (1990).............................................................................................21

**Statutes**

ADA ............................................................................................................................22

Civil Service Law § 75 ...............................................................................22, 23, 24, 25

Education Law § 3020-a ........................................................................................23, 24

Misc. N.Y .....................................................................................................................24

N.Y. Labor Law § 27-a ................................................................................................22

Rehabilitation Act, and Other EEO Laws ...................................................................22

**Other Authorities**

"About Your Union" available at https://www.uft.org/your-union/about-uft; ...............9

Emergency Executive Order No. 98 ..............................................................................6

Emergency Executive Order No. 225 ............................................................................7

Executive Order No. 78 ..............................................................................................8, 9

https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-
       rehabilitation-act-and-other-eeo-laws .............................................................22

https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-
       requirement-doe-3.pdf. The DOE .................................................................7, 8

New York City Administrative Code § 15-113 .......................................22, 23, 24, 25

New York City Charter Section 487(a) ..................................................................22, 23

New York State Constitution Article 8, Section 1 .......................................................28

NYC COVID-19 Data and Trends available at
       https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page .........................6, 7

Rule 12(b)(7) ................................................................................................................13

Rule 19 .........................................................................................................................13

United States Constitution Fourteenth Amendment .......................................................4

## PRELIMINARY STATEMENT

On October 20, 2021 the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021.[1]  The COH Order provides compelling grounds for mandating the vaccination of City employees against COVID-19, citing the emergence of "variants of concern" that presently make up most COVID-19 cases in New York City and, troublingly, are more transmissible than earlier variants.  No less an authority than the U.S. Centers for Disease Control ("CDC") has acknowledged the threat presented by such variants and, moreover, has stated that vaccination is an effective tool to prevent the spread of COVID-19 variants and the development of new variants, benefitting both vaccine recipients and those with whom they have contact. Thus, the COH Order is fully premised on potentially saving lives, protecting public health, and promoting public safety.

The COH Order, as well as a nearly identical DOHMH order applicable to employees of the New York City Department of Education ("DOE") ("DOE Vaccine Mandate"), has been the subject of repeated legal challenges brought in state and federal court.  See Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al., Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.) (COH Order); In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty) (COH Order); see also Maniscalco v. N.Y. City Dept. of

---

[1] As noted in the DOHMH Order, due to a staff shortage in Department of Correction ("DOC") facilities, the vaccination requirement for DOC uniformed personnel not assigned to posts in healthcare settings is delayed until December 1, 2021.

Educ., No. 21 Civ.5055 (E.D.N.Y.) (BMC);  Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC)
(vaccine mandate as applied to DOE employees); Keil v. The City of New York, et al., 21 Civ.
8773 (SDNY)(VEC)(same); The New York City Municipal Labor Committee ("MLC"), et al. v.
The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.)(same).  The most
recent challenge to the enforcement of the DOE Vaccine Mandate was brought before this Court
by the same counsel as the plaintiffs herein just last week in Broecker, et al. v. New York City
Department of Education, et al., Docket No. 21 CV 6387(KAM)(LB).

  Plaintiffs in these challenges have sought to enjoin the enforcement of the COH
Order and the DOE Vaccine Mandate.  Time and again the respective Court denied the plaintiffs'
application for a temporary restraining order and/or preliminary injunction seeking to enjoin the
mandate, finding, among other things, that plaintiffs had not shown the likelihood of success on
the merits.  As such, there can be no debate that the COH Order is itself sound and enforceable.

  Plaintiffs are employees of the New York City Fire Department ("FDNY") who
seek to represent themselves and a class of other FDNY employees who oppose the COH Order
and the consequences for failure to comply with it.  Plaintiffs claim that requiring COVID-19
vaccination as a qualification of employment for FDNY employees interferes with their
procedural due process rights under the Fourteenth Amendment of the United States
Constitution.  Plaintiffs now seek—four weeks after the deadline for employees to show proof of
vaccination—a preliminary, and mandatory, injunction that would prohibit FDNY from taking
any action stemming from plaintiffs' refusal to comply with the lawful COH Order and that
would disrupt the status quo by requiring FDNY to return Plaintiffs to FDNY payroll.

  While this motion is couched as a constitutional claim, Plaintiffs are actually
contending that a duly authorized government authority, namely, DOHMH, has no ability to

impose requirements of employment in response to a public health emergency.  This is simply incorrect.  The COH Order – which has been repeatedly upheld as lawful – provides that "[a]ny City employee who has not provided the proof described in Paragraph 2 must be excluded from the premises at which they work beginning on November 1, 2021."  The consequence of this order is that those FDNY employees who are unwilling to be vaccinated – and have not obtained an exemption or reasonable accommodation with respect to the mandate – are no longer permitted to perform work for the City.  As explained below, it is well-established that government authorities are entitled to establish lawful employment requirements, such as holding a particular license or a residency requirement, and an employee's failure to adhere to these requirements permits their summary separation from service.  Plaintiffs have not complied with the lawful COH Order, and, absent exemption from the vaccination mandate, the FDNY is prohibited from permitting them to work for the FDNY.

Putting aside the validity of the COH Order, and the ample scientific and legal justifications for the same, Plaintiffs' request for a preliminary injunction must be denied for the simple reason that they have not demonstrated irreparable harm. Plaintiffs, by their own admission, were taken off FDNY payroll on November 1, 2021, four weeks before seeking affirmative injunctive relief returning them to payroll. Thus, as this Court previously recognized just last week in analogous circumstances created by the same counsel, Plaintiffs' own inaction and delays in seeking injunctive relief belie the purported emergency relief sought here.

In addition, the allegedly irreparable harm articulated here—loss of salary and employment—is precisely the sort of harm that the Second Circuit has repeatedly held to be insufficient to justify injunctive relief.

Critically, **<u>nine</u>** plaintiffs[2] – by their own admission - have been restored to payroll after having been placed on Leave Without Pay ("LWOP") for a brief period of time. Further, **<u>47 of the 48</u>** plaintiffs[3] have requests for accommodations to be exempt from the COH Order pending with FDNY's Equal Employment Opportunity Office ("EEO"). As fully detailed below, in the event these requests are granted, these plaintiffs will be restored to payroll and paid back pay for the period of time they were on LWOP. If their requests are denied, plaintiffs have seven days to appeal that determination via a Citywide appeals process.

Also with respect to irreparable harm, while an alleged deprivation of a Constitutional right can suffice to show irreparable harm, that finding is not automatic. Indeed, in order for an alleged Constitutional violation to be deemed "irreparable," the plaintiff must show that the constitutional violation is convincingly shown **<u>and</u>** the violation results in non-compensable damages. Here, any alleged damage flowing from the purported violation is undisputedly compensable.

Finally, the claims on which the preliminary injunction request are premised (which rely exclusively on a novel procedural due process theory), are unlikely to succeed on the merits. Because of that, and the other reasons set forth below, Plaintiffs meet none of the requirements for a preliminary injunction. Therefore, Defendants respectfully submit that Plaintiffs' application for a preliminary, and mandatory, injunction must be denied in its entirety.

---

[2] Plaintiffs Bottalico, Filocamo, O'Keefe, Johnson, Baudille, Penoro, Mastoprietro, Vasquenz and DiTrani

[3] Only Plaintiff Taylor does not have an accommodation request pending.

## STATEMENT OF FACTS

**A.      City of New York's Response to the COVID-19 Pandemic**

On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in the City of New York ("the City") to address the threat posed by COVID-19 to the health and welfare of City residents, and this order remains in effect today.  See O'Connor Decl. at Ex. A, COH Order.  Thereafter, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and recently declared that the public health emergency continues to be in effect.  Id.

Since February 29, 2020, New York City has experienced over one million residents with a positive COVID-19 diagnosis.  See NYC COVID-19 Data and Trends available at  https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page,  last accessed on Nov. 26, 2021.  Tragically, more than 34,000 New York City residents have died due to COVID-19.  Id. While positive cases and deaths are currently trending down, New York City is still battling COVID-19, and in particular, "variants of concern," including the Delta variant, which are more transmissible than earlier variants. See Def. Ex. A.  The variants of COVID-19 are particularly concerning because they are more easily and quickly transmitted.  Id.

The CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants, and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated.  Id.  DOHMH reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New

York City.  Id.  In late 2020 and early 2021, three leading vaccines were given emergency authorization in the United States.  Specifically, on December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the first COVID-19 vaccine, the Pfizer-BioNTech COVID-19 vaccine; on December 18, 2020, the FDA issued an EUA for the Moderna COVID-19 vaccine; and on February 27, 2021, the FDA issued an EAU for the Johnson & Johnson COVID-19 vaccine.  Then, on August 23, 2021, the FDA gave full approval to the Pfizer vaccine.

In recognition of the efficacy of vaccines in combatting COVID-19, on August 16, 2021, Mayor de Blasio issued Emergency Executive Order No. 225, the "Key to NYC," requiring that patrons and employees of establishments providing indoor entertainment, dining, and gyms and fitness centers must show proof that they have received at least one dose of an approved COVID-19 vaccine, and such Order, as amended, is still in effect.  Id. Thereafter, on August 24, 2021, the DOHMH Commissioner issued an order requiring that DOE employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting (hereinafter "DOE Order").  See DOE Vaccine Mandate at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf.  The DOE Vaccine Mandate was re-issued on September 12 and 15, 2021, and subsequently amended on September 28, 2021.  Id. The DOE Vaccine Mandate and Amendment were ratified by the New York City Board of Health on September 17, 2021 and October 18, 2021.  Id.

The DOE Vaccine Mandate was the subject of four legal challenges brought in state and federal court. See Maniscalco v. N.Y. City Dept. of Educ., No. 21-cv-5055 (E.D.N.Y.); Kane v. de Blasio, 21 Civ. 7863 (VEC) (S.D.N.Y.); Keil v. The City of New York, et al., 21 Civ.

8773 (SDNY)(VEC)(same); The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.).   In each challenge, the plaintiffs sought to enjoin the enforcement of the DOE Order as applied to DOE employees.   Id.   In MLC, Maniscalco, Keil and Kane, the respective Courts denied the plaintiffs' application for a temporary restraining order and/or preliminary injunction seeking to enjoin the DOE Order.

On August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test.   See Def. Ex. A, COH Order.   Shortly thereafter, on September 9, 2021, President Biden issued an Executive Order stating that "[i]t is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public," and ordered each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID19 vaccination for all of its Federal employees, with exceptions only as required by law".   Id.

### B.   COH Order

Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19.   In accordance with Section 17-109(b), DOHMH may adopt vaccination measures to effectively prevent the spread of communicable diseases.   Furthermore, pursuant to Section 3.01(d) of the New York City Health Code, the DOHMH Commissioner is authorized to issue orders and take actions that deemed necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health

against an existing threat and a public health emergency has been declared pursuant to that Section.

As such, on October 20, 2021, Commissioner Chokski issued the COH Order to require COVID-19 vaccination for City employees and certain City contractors.  The COH Order required that by 5:00 p.m. on October 29, 2021, City employees must provide proof to the agency or office where they work that: (1) they have been fully vaccinated against COVID-19; or (2) they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or (3) they have received the first dose of a two-dose COVID-19 vaccine.  See Def. Ex. A, COH Order.  The COH Order goes on to require that any City employee who has not provided the above-described proof must be excluded from their assigned work location beginning on November 1, 2021.  Id.  The COH Order specifically provides that "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law."  Id.

### C.     Impact Bargaining

Following the issuance of an earlier COH Order impacting the New York City Department of Education ("DOE"), bargaining units for City and DOE employees met with the City to negotiate over the impact of the COH Order.  United Federation of Teachers ("UFT") is the bargaining unit for Teachers, Secretaries, Paraprofessionals, Guidance Counselors, Speech Language Pathologists, School Psychologists, and Social Workers, among other titles, employed by DOE.  See "About Your Union" available at https://www.uft.org/your-union/about-uft; last accessed Nov. 19, 2021 On September 10, 2021, an arbitrator issued a decision to resolve the impasse, which established  (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits; and (3) that the DOE may "unilaterally separate employees" who have not complied with the vaccination mandate or have

an approved exemption or accommodation and have not opted for either separation option.  See O'Connor Decl., Exh. B (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO (hereafter "Impact Arbitration Decision").

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations engaged in impact bargaining with the other unions representing City employees, including the unions representing Plaintiffs herein, i.e. the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA") and District Council 37, City of New York ("DC 37").

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave and separation procedures for those City employees for whom DC 37 is the bargaining agent who do not comply with the COH Order.  See O'Connor Decl. at C, Memorandum of Agreement District Council 37, City of New York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021 ("DC 37 Agreement").

The processes established by the DC 37 Agreement apply to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response.  See id.[4]  It also sets forth that employees who have not requested an exemption, or whose request was denied, may be placed on leave without pay by their employing agency starting October 4, 2021.  See id.  While on leave without pay, employees continue to be eligible for health insurance.  Id. Employees who

---

[4] As detailed below, 44 of the 48 plaintiffs availed themselves of the accommodation process.

submit proof of vaccination before November 30, 2021, will be eligible to return to their position within one week of submitting their documentation to their agency.  Id.

The agreement also sets forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of leave without pay and with health benefits.  See id.  City employees who have not complied with the COH Order could opt to either separate from service by October 29, 2021 and receive enhanced payment of accrued sick leave and health insurance through September 5, 2022, unless they are eligible for health insurance from another source.  Id. Alternatively, as a second option, employees can also opt to have their leave without pay extended to September 5, 2022, and maintain health coverage.  Id. To the extent that those employees who have chosen to extend their leave without pay and do not comply with the COH Order by the end of the period, they will be deemed to have voluntarily resigned.  Id.  In addition, the DC 37 Agreement provides that on or after December 1, 2021, the City will seek to unilaterally separate employees who remain out of compliance with the COH Order and have not applied for either the extended leave or separation.  Id.

With respect to UFA, which represents FDNY Firefighters, on October 29, 2021, the UFA union president, Andrew Ansbro sought an injunction on behalf of FDNY Firefighters to enjoin the City from "implementing [the COH Order] so as to . . . [p]revent the summary discipline, in the form of forced unpaid leave and eventual termination  of UFA members if they remain unvaccinated, which discipline would be arbitrary, capricious and unlawful and a violation of the members' due process rights."  See O'Connor Decl., Ex. D, Verified Petition in In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty).  Following a hearing on November 1, 2021, this motion for injunction relief was denied.  See O'Connor Decl.,

Ex. E, Order in <u>In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al.</u>, Index No. 159738/2021, dated November 1, 2021.

The UFA, who was later joined by the Uniformed Fire Officers Association ("UFOA"), also filed an Improper Practice Petition with the Board of Collective Bargaining and, in connection with that Petition, sought injunctive relief.  <u>See</u> O'Connor Decl., Ex. F, Verified Scope of Bargaining and Improper Practice Petition <u>In the Matter of the Improper Practice Petition between Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al.</u>, dated October 27, 2021; O'Connor Decl., Ex. G, Verified Petition for Injunctive Relief <u>In the Matter of the Petition for Injunctive Relief between Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al.</u>, dated October 27, 2021; <u>see also</u> O'Connor Decl., Ex. H, Letter, dated November 18, 2021 from Harry Greenberg to Steven E. Star.  In so doing, UFA argued that because the COH Order "carries severe penalties that are disciplinary in nature by requiring members to go on [LWOP] and face termination which clearly implicates mandatory subjects of bargaining."  <u>See</u> Ex. G.  The Board of Collective Bargaining denied the request for injunctive relief on the grounds that the unions could not establish irreparable harm or a likelihood of success on the merits.  <u>See</u> O'Connor Decl., Ex. I, Notice of Board Determination, Request for Injunctive Relief, dated November 16, 2021.

### D.    Plaintiffs' Pending Accommodation Requests

All plaintiffs herein but for Plaintiffs Heaton, Bevilacqua, O'Keefe and Taylor have availed themselves of the FDNY's established process for seeking a reasonable accommodation to be exempted from the COH Order.  <u>See</u> O'Connor Decl., Ex. J, Declaration of Don Nguyen, dated November 29, 2021.   Any plaintiff who is granted a reasonable

accommodation by the FDNY to be exempt from the COH Order will be restored to FDNY payroll and provided with back pay for the period of time they were on Leave Without Pay ("LWOP") status.  Id.  Additionally, any plaintiff who is denied a reasonable accommodation by the FDNY to be exempt from the COH Order will be provided with an opportunity to appeal that determination.  Id.  Any plaintiff whose reasonable accommodation is denied with a written determination of the request and will be provided with written information on the appeals process, including a link to the City's online appeals request portal.  Id.  Plaintiffs must appeal the denial within seven business days by submitting an appeal, and any materials supporting their appeal, via the online review request portal, which will automatically notify FDNY's EEO Office of the appeal.  Id.  Upon notification of the appeal, FDNY's EEO Office will upload all records concerning the Agency determination of the reasonable accommodation request within one business day.  Id.  Supplemental material may be requested to make a determination on appeal.  Id.  If an appeal results in the grant of an accommodation, the plaintiff will be restored to payroll and paid back pay for the time they were on LWOP status.  Id.

If a plaintiff's appeal is denied, they must submit proof of the first dose of a vaccination within three business days, and if required, of a second dose within 45 days thereafter.  Id. If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will continue on LWOP.  Id.

**ARGUMENT**

**A.  PLAINTIFFS FAIL TO NAME NECESSARY PARTIES**

"All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." NYC Charter § 396. The FDNY does "not have a legal identity separate and apart from the municipality and cannot sue or be sued." Candelario v. City

of New York, 539 Fed. App'x 17 (2d Cir. 2013); see also Olabopo v. Gomes, 2016 U.S. Dist. LEXIS 134521, at *9 (E.D.N.Y. September 28, 2016) (dismissing claims against FDNY because it is a non-suable entity.  Thus, FDNY is a not a proper party to this action.

   Under Rule 12(b)(7), an action may be dismissed for failure to join a necessary party under Rule 19. See Fed. R. Civ. P. 12(b)(7).  Here, the City of New York is most certainly a necessary party given that FDNY is not a suable entity.  Additionally, given the allegations contained in Plaintiff Garland's affidavit that UFA has breached its duty of fair representation, UFA is similarly a necessary party.  Finally, DC 37 is also a necessary party because it negotiated and entered into the DC 37 Agreement which is now being challenged by certain plaintiffs.  Given plaintiffs failure to join three necessary parties, the Complaint should be dismissed.

## B. PLAINTIFFS DO NOT HAVE STANDING TO CHALLENGE THE DC 37 AGREEMENT

   By becoming a union member, an individual employee "has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union." Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist., 435 N.Y.S.2d 793, 794 (2d Dep't 1981), aff'd 55 N.Y.2d 912 (1982).  The remedy for an individual is to pursue a duty of fair representation claim against his or her union.  See id. at 24-25.  See also 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 260 (2009) (holding that unions were free to negotiate a departure from federal statutory scheme on behalf of their members).  This is precisely the situation plaintiffs here find themselves in: they are challenging their placement on Leave Without Pay ("LWOP") and potentially their separation from the City; however, their placement on LWOP and their projected separation was the result of negotiations between the City and DC 37, not plaintiffs individually.  Accordingly, plaintiffs covered by the DC 37 Agreement do not

have standing to challenge their placement on LWOP and/or potential separation due to the fact that this procedure was collectively bargained with their union.

## C.  PLAINTIFFS SEEK A MANDATORY INJUNCTION, AND FAIL TO MEET THE ASSOCIATED BURDEN

A typical injunction seeks to maintain the status quo pending a trial on the merits. Abdul Wali v. Coughlin, 754 F.2d 1015 (2d Cir. 1985).  Plaintiffs are required to meet the higher standard of a mandatory injunction if (1) the injunction would alter, rather than maintain the status quo or (2) the injunction would grant the movant with substantially all the relief sought and that relief cannot be undone even if defendants would prevail on the merits.  Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, *33-34 (2d Cir. 1995).  Here, Plaintiffs are seeking, among other things, to be restored to FDNY payroll after having been placed on LWOP for their failure to comply with the COH Order.   It must be noted that, in addition to being restored to payroll, Plaintiffs seek to have their "benefits, including health benefits, and pension credits," restored.   However, Plaintiffs on LWOP maintain their health benefits and therefore all the Plaintiffs herein continue to maintain their health benefits despite their placement on LWOP.

The status quo in a preliminary injunction is the "last, peaceable uncontested status which preceded the pending controversy."  LaRouche v. Kezer, 20 F3.d 68, 74 n.7 (2d Cir. 1994).  For the purposes of Plaintiffs' application to be restored to payroll, the last "peaceable" moment was the day prior to being placed on LWOP.  Utilizing Plaintiff Garland as an example, he avers in his affidavit that he has been on LWOP since November 1, 2021.  Thus, in order to maintain the status quo of remaining on payroll, Plaintiff Garland would have been required to make the instant application on or before October 31, 2021.  He – and the other Plaintiffs – failed to do so.  Thus, if plaintiffs' application were granted, it would alter, not maintain, the status quo.

Plaintiffs' application is completely silent as to why Plaintiffs waited until November 26, 2021 to seek this "emergency" relief from the Court. This is despite the fact that the Complaint confirms that Plaintiffs were given advance warning that they were going to be placed on LWOP as of November 1, 2021.  Plainly, Plaintiffs' own delay strongly counsels against the extraordinary equitable relief they seek. See Broecker, et al. v. New York City Department of Education, et al., Docket No. 21 CV 6387(KAM)(LB) at Dkt. No. 33 at page 24-25; Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.").

In any event, given their placement on LWOP four weeks ago, Plaintiffs must meet the higher standard required for mandatory injunctions.  In particular, they must show a "clear" or "substantial" likelihood of success on the merits.  Tom Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir. 1995); Doninger v. Niehoff, 527 F.3d 41, *47 (2d Cir. 2008). From their Complaint, it is clear that Plaintiffs will not be able to meet this high burden because the *only* harm associated with their placement on LWOP is removal from payroll.  This type of alleged harm is – by definition – reparable.  Accordingly, Plaintiffs cannot meet the mandatory injunction standard and their application should be denied.  And, even so, for substantially the same reasons as discussed below, Plaintiffs cannot meet even the lower, more permissive standard of a prohibitory injunction.

## D.  PLAINTIFFS DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION

In order to justify a preliminary injunction, plaintiffs must demonstrate: (1) irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) the

balance of equities tips decidedly in their favor; and (4) that the public interest weighs in favor of granting an injunction.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24-25 (2008); Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008).   Of these requirements, a showing of likely irreparable harm is often referred to as the **most** important. See, e.g., Citibank, N.A., 756 F.2d at 275.   An injunction is unwarranted because Plaintiffs cannot demonstrate any of these requirements.

### E.  PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

"[I]rreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'"  Impax Media Inc. v. Northeast Adver. Corp., No. 17 Civ. 8272, 2018 U.S. Dist. LEXIS 4940 at *10 (S.D.N.Y. Jan. 10, 2018) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009)).   In making a showing of irreparable harm, Plaintiffs must demonstrate that there is a threat of actual injury for which available legal remedies are inadequate. See Score, Inc. v. Cap Cities/ABC, Inc., 724 F. Supp. 194, 198 (S.D.N.Y. 1989).   "Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).  As the Supreme Court has held "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

Plaintiffs identify two so-called "irreparable" harms: continued loss of pay while on LWOP and their potential separation from FDNY.  Neither of these harms is irreparable or otherwise sufficient to justify a preliminary injunction.

As noted above, the extraordinary delay in seeking to enjoin an action that already occurred four weeks ago, greatly forecloses the validity of any professed "urgent need for speedy action to protect the plaintiffs' rights."  Citibank N.A., 756 F.2d at 276.  Having delayed to the point of manufacturing an emergency, Plaintiffs' application claiming an impending crisis now exists must be viewed as a bald calculation bordering on pure gamesmanship.  Indeed, the Second Circuit has explained that a party's "failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'"  Id. at 277 (quoting Le Sportsac, Inc. v. Dockside Research, Inc., 478 F. Supp. 602, 609 (S.D.N.Y. 1979)).  A delay "may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prod., 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks and citations omitted).  While Courts have not imposed rigid deadlines by which a request for preliminary injunctive relief must be made, even a relatively brief delay may be deemed too long.  See, e.g., Citibank, 756 F.2d at 276-77.

Here, as noted above, Plaintiffs allege they have all been on LWOP since November 1, 2021; however Plaintiffs Bottalico, Filocamo, O'Keefe, Johnson, Baudille, Penoro, Mastoprietro, Vasquenz and DiTrani have all since been restored to payroll.  See Complaint at ¶ 65.  Plaintiffs nevertheless waited 25 days to seek this "emergency" relief from the Court.  This delay is both lengthy and completely unexplained thereby severely undercutting any "urgency"

associated with this application.  Also, plaintiffs' instant application completely ignores the fact that **47 out of 48** plaintiffs currently have requests pending before FDNY EEO for accommodations to the COH Order.

In Broecker, this Court held that the delay between when the plaintiffs in that case learned of DOE's intention to seek separation for noncompliant employees and bringing the "emergency" motion for preliminary injunction "greatly undermine[d] the strength" of that motion.  See Broecker, at Dkt. No. 33 at page 24.  This Court further found in Broecker that the "Plaintiffs' inaction does not convey a looming irreparable harm, and does not invoke the urgent need for speedy action to protect the plaintiffs' rights[,] as is typical when injunctions are sought on an expedited basis."   Id. at 25 (internal quotations and citations omitted)(alteration in original).  Here,  plaintiffs' similar "inaction" cuts against the need for emergency relief.

Next, "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).  As the Supreme Court has held "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . [m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).  Additionally, to demonstrate irreparable harm, the moving party must establish an injury that is not remote or speculative but "certain and imminent harm for which a monetary award does not adequately compensate." Wisdom Imp. Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 113 (2d Cir. 2003).

With respect to alleged constitutional violations, an allegation of a constitutional violation "is insufficient to automatically trigger a finding of irreparable harm," unless "the constitutional deprivation is convincingly shown and that violation carries **noncompensable** damages..." Donohue v. Mangano, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012)(emphasis added). Here, however, the two claimed harms that allegedly flow from the claimed procedural due process violation, i.e. the continued loss of pay and projected separation from employment, are quintessential **reparable** harms.  See Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005); Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003).

Plaintiffs' allegation that they have been placed on LWOP and are facing a possible "loss of employment is insufficient to carry [their] burden of showing irreparable harm because [they] make no showing that the loss of [their] employment cannot be remedied with money damages." Buckley v. N.Y. & Presbyterian Hosp., No. 21 Civ. 7864 (LTS), 2021 U.S. Dist. LEXIS 181135 (S.D.N.Y. Sep. 21, 2021); see also Holt v. Continental Group, 708 F.2d 87, 90-91 (2d Cir. 1983), cert. denied, 465 U.S. 1030 (1984) ("the requisite irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown."); Guitard v. United States Sec'y of Navy, 967 F.2d 737, 742 (2d Cir. 1992)("injuries that generally attend a discharge from employment — loss of reputation, loss of income and difficulty in finding other employment — do not constitute the irreparable harm necessary to obtain a preliminary injunction")(internal citations omitted).

Additionally, given that **all plaintiffs** save Plaintiff Taylor currently have reasonable accommodation requests pending with the FDNY, their claim that they may be terminated for failure to comply with the COH Order is entirely speculative.  Similarly, nine

plaintiffs have already been restored to payroll and removed from LWOP.  See Complaint at ¶ 65.

The UFA has already sought **twice** to enjoin the implementation of the COH Order on the ground that an injunction was necessary so as to "[p]revent the summary discipline, in the form of forced unpaid leave and eventual termination of UFA members if they remain unvaccinated."  See O'Connor Decl., Exs. D; G.  Both the New York Supreme Court and the New York City Board of Collective Bargaining denied these motions.  See O'Connor Decl., Exs. E; I.  This third bite at the injunction apple must meet the same fate as the previous two.

Similarly, in examining the DOE Vaccine Mandate this Court held just last week that the "pecuniary harms" alleged by the plaintiffs in that case "are neither irreparable nor sufficient to justify the presently requested injunctive relief."  See Broecker at Dkt. No. 33 at page 23.  Also, in MLC, the Court held that the petitioners were "unlikely to be succeed on the second prong of the preliminary injunction test as they cannot establish an irreparable harm as the loss of employment is compensable by money damages and reinstatement to said employment. Petitioners represented employees who refuse to accept vaccination and are ineligible for an exemption are still entitled to contest any negative outcome through their union procedures and additionally are able to pursue their profession outside of those schools impacted by the Order."  See N.Y.C. Mun. Labor Comm. v. City of N.Y., 2021 NY Slip Op 21260, ¶ 5 (Sup. Ct.)

Indeed, even a loss of "benefits" attendant to employment does not constitute irreparable harm.  See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012) (back pay includes lost fringe benefits such as vacation pay and pension benefits); E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of the Elec.

Indus., 164 F.3d 89, 101 (2d Cir. 1998)(holding same); Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(a reinstatement order issued by the District Court could award "full pension benefits, including an award of seniority status covering the interim between termination and a final disposition of the parties' rights.").  Because Plaintiffs are unable to demonstrate irreparable harm, their motion for a preliminary injunction must be denied.

## F.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).  "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omittedf) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process."  J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013).  "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." Id. (internal citation and quotation marks omitted).  "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." MacFall v. City of Rochester, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994).  In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it.  Id. (quoting McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)).

Plaintiffs argue that they have been "suspended without pay" and may face separation from the FDNY without the due process owed to them and therefore they are likely to succeed on the merits. Plaintiffs are incorrect.

Plaintiffs premise their procedural due process claim on the faulty notion that they are being subjected to "discipline" in the form of an unpaid "suspension" without the process owed to them via New York City Administrative Code § 15-113 or Civil Service Law § 75.  Not so.  Rather, by virtue of Plaintiffs' unwillingness to comply with the COH Order, they are simply no longer fit and/or qualified to continue their public employment with the City.  As detailed below, they are, therefore, not entitled to any process in advance of their placement on LWOP and separation.

The City, as a government employer, has a duty to maintain a safe workplace.  See generally N.Y. Labor Law § 27-a.  The obligation of how best to do so is within the discretion of the employer.  See New York State Inspection, Sec. & Law Enforcement Emples., Dist. Council 82 v. Cuomo, 64 N.Y.2d 233, 237-40 (1984).  Federal, state and local law also confirm, in the context of the COVID-19 pandemic, that employers can refuse to allow employees to work who are not fit for work under the applicable medical standards set forth by the public health authorities.  See e.g. EEOC Guidance, What You Should Know About Covid-19 and the ADA,

the Rehabilitation Act, and Other EEO Laws, at K.1. (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, last visited Nov. 18, 2021). Further, New York City Charter Section 487(a) provides that the FDNY Commissioner "shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof . . ."

The FDNY, consistent with its obligation to provide a safe workplace and the Commissioner's powers under § 487(a), and in compliance with the lawful COH Order, cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform their job functions when they lack fitness to do so under the COH Order.  When employees are not fit to perform their duties under these circumstances, they are not being "suspended" but rather are unable to work due to ineligibility caused by their lack of fitness, even where here the ineligibility may be temporary and curable.  C.f. Matter of Brown v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 2009 NY Slip Op 31687(U), ¶ 6 (Sup. Ct., N.Y. Co. 2009), citing O'Connor v. Board of Education, 48 A.D.3d 1254 (4th Dept. 2008) lv. denied 10 N.Y.3d 928 (2008) (teacher's termination due to failure to maintain residency was not a disciplinary matter and therefore was outside the scope of § 3020-a.).  To be sure, the Second Circuit earlier this month upheld vaccination as a "condition of employment" in the healthcare field.  We the Patriots USA, Inc. v. Hochul, Nos. 21-2179, 21-2566, 2021 U.S. App. LEXIS 32880, at *52-53 (2d Cir. Nov. 4, 2021).  Likewise, here, it is also appropriate to require plaintiffs, who are frequently in close proximity to citizens in a medical emergency or other danger, to be vaccinated as a condition of employment.,

Plaintiffs' argument that they were entitled to an Administrative Code § 15-113 or Civil Service Law § 75 hearing in advance of being placed on LWOP or being ultimately separated is misplaced.  Hearings are not required in the context of employment qualifications "unrelated to job performance, misconduct, or competency."   O'Connor v. Bd. of Educ., 48 A.D.3d 1254, 1255 (4th Dep't 2008) , appeal dismissed, 10 N.Y.3d 928 (2008); Adrian v. Bd. of Ed., 92 A.D.3d 1272, 1273 (4th Dep't 2012) (same), leave to appeal granted, 19 N.Y.3d 804 (2012); Brown v. Bd. of Educ., 2009 N.Y. Misc. LEXIS 5475, *9-10 (Sup. Ct. N.Y. Co. July 22, 2009) ("The termination of Petitioner did not implicate the procedural protections of Education Law § 3020-a because Petitioner's termination was due to her legal ineligibility to serve as a teacher, rather than any alleged misconduct or incompetence on her part.") (citations omitted; Felix v. Dep't of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) (failure to maintain residency requirement does not trigger the protections of Civil Service Law § 75 because it is a matter of job eligibility, not discipline for misconduct).

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency" which are subject to the applicable disciplinary procedures, from a "qualification of employment" which is not subject to such procedures. Matter of New York State Off. of Children & Family Servs. v. Lanterman, 14 N.Y.3d 275, 282 (2010); see also City School District v. McGraham, 17 N.Y.3d 917, 918 n.1 (2011).

Here, the FDNY is enforcing the lawful COH Order by removing unvaccinated employees from the workplace because they are no longer fit to perform their duties.  While this is a new job requirement put in place to combat at novel virus, the analysis remains unchanged. The FDNY is able to separate employees that are not in compliance with lawful job requirements.  In essence, plaintiffs seek to redefine "discipline" to include a failure to meet a

qualification of their FDNY employment.  The Courts have repeatedly rejected such attempts. O'Connor, 48 A.D.3d at 1255; Adrian, 92 A.D.3d at 1273; Brown, 2009 N.Y. Misc. LEXIS 5475, at *9-10, Appendix "A,"; see Felix, 3 N.Y.3d at 505.

Thus, it is clear that a public employer may lawfully, and summarily, separate employees from service without process due to the employee's legal ineligibility to maintain their employment. Here, the City's Health Commissioner promulgated a lawful eligibility requirement: to be eligible to work for DOE, an individual must be vaccinated against COVID-19.  Plaintiffs have not complied with that lawful requirement and are therefore subject to separation.  This ineligibility in no way implicates the disciplinary procedures delineated in § 15-113 or § 75 because it does not pertain to misconduct or job performance.  Therefore, because plaintiffs no longer meet eligibility requirements, they can be separated from service without the disciplinary procedures delineated in § 15-113 or § 75.

Even if Plaintiffs could demonstrate that their placement on LWOP and potential separation was somehow "disciplinary" in nature, their procedural due process claim nevertheless fails for several reasons.

First, while a plaintiff in a § 1983 case is not required to exhaust their administrative remedies before bringing suit, (see Patsy v. Bd. of Regents of Fla., 457 U.S. 496 (1982)), this general rule does not apply in a procedural due process suit if plaintiffs failed to avail themselves of the right to be heard.  See Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).  In Narumanchi, the Second Circuit explained that in procedural due process cases, the limited procedural rights guaranteed under the circumstances of a particular case could be satisfied by pre-deprivation notice and hearing rights contained in grievance procedures of a collective bargaining agreement.  850 F.2d at 72.

Here, Plaintiffs contend that they are entitled to hearings pursuant to their respective collective bargaining agreements.  See Dkt. No. 5-2, Garland Aff. at para. 3.  The collective bargaining agreements governing the terms of Plaintiffs' employment establish grievance and arbitration procedures that Plaintiffs could use to challenge the so-called "disciplinary actions" taken against them.  Thus, Plaintiffs' procedural rights were adequately satisfied by the grievance procedures contained in the applicable collective bargaining agreements.  The fact that Plaintiffs chose not to utilize such procedures does not change this outcome. Cf. Capul v. City of N.Y., No. 19 Civ. 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020) (holding that City employees' failure to avail themselves of adequate post-deprivation remedies did not render their procedural due process claims viable), aff'd 832 Fed. App'x. 766 (2d Cir. 2021).

To the extent that certain Plaintiffs are claiming that UFA was "not accepting" grievances, see Dkt. No. 5-2, Garland Aff. at para. 2, that allegation does not impact the constitutional analysis vis-à-vis the City.  Indeed, while Plaintiffs may be claiming that UFA breached its duty of fair representation by allegedly failing to accept grievances, that alleged failure on UFA's part does not change the fact that Plaintiffs had ample process at their disposal via their collective bargaining agreements (or via Article 78 proceedings brought in New York State Supreme Court).  Thus, UFA's supposed failure to bring grievances does not suffice to establish a Constitutional violation against FDNY.

Second, the FDNY has provided process which far exceeds the constitutional minima to plaintiffs, and **47 of the 48 plaintiffs** have available themselves of that process. All plaintiffs herein but for Plaintiff Taylor have availed themselves of the FDNY's established process for seeking a reasonable accommodation to be exempted from the COH Order.  See Def.

Ex. J.  Any plaintiff who is granted a reasonable accommodation by the FDNY to be exempt from the COH Order will be restored to FDNY payroll and provided with back pay for the period of time they were on LWOP.  Id.  Additionally, any plaintiff who is denied a reasonable accommodation by the FDNY to be exempt from the COH Order will be provided with further process in the form of an appeal of that determination.  Id.  Any plaintiff whose reasonable accommodation is denied with a written determination of the request and will be provided with written information on the appeals process, including a link to the City's online appeals request portal.  Id.  Plaintiffs must appeal the denial within three business days by submitting an appeal, and any materials supporting their appeal, via the online review request portal, which will automatically notify FDNY's EEO Office of the appeal.  Id.  Upon notification of the appeal, FDNY's EEO Office will upload all records concerning the Agency determination of the reasonable accommodation request within one business day.  Id.  Supplemental material may be requested to make a determination on appeal.  Id.  If an appeal results in the grant of an accommodation, the plaintiff will be restored to payroll and paid back pay for the time they were on LWOP status.  Id.  If a plaintiff's appeal is denied, they must submit proof of the first dose of a vaccination within three business days, and if required, of a second dose within 45 days thereafter.  Id.  If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will continue on LWOP.  Id.

Despite this process, Plaintiffs – including the 47 plaintiffs that have availed themselves of this process – are claiming they were not provided with constitutionally sufficient due process. The Court should not countenance such hollow arguments.

Third, for those plaintiffs covered by the DC 37 Agreement, as detailed above, this agreement sets forth a process for separation from employment or extension of LWOP.

While Plaintiffs may not like these processes, and may have chosen not to avail themselves of them, this does not amount to a Constitutional due process violation.

Therefore, even if Plaintiffs could demonstrate that their placement on LWOP and potential separation was somehow "disciplinary" in nature, their procedural due process claim nevertheless fails because they were provided with all process they were owed.

## G.  THE BALANCE OF EQUITIES DOES NOT TIP IN FAVOR OF PLAINTIFFS

Even if Plaintiffs could prove irreparable harm and demonstrate a likelihood of success on the merits – which they cannot – they would, nonetheless, be unable to prove that the balance of hardship tips decidedly in their favor.  <u>Trump v. Deutsche Bank AG</u>, 943 F.3d 627, 640 (2d Cir. 2019), <u>rev'd on other grounds</u>, __U.S.__, 140 S.Ct. 2019 (2020).  To balance the equities in each case, courts must balance the competing claims of injury on each party of either granting or withholding the requested relief.  <u>Winter v. NRDC, Inc.</u>, 555 U.S. 7, at 24 (2008) (citing <u>Amoco Production Co.</u>, 480 U.S. 531, 542 (1987)). In exercising their sound discretion, courts should pay particular regard to the public consequences in employing the extraordinary remedy of injunction.  <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982).

Here, the balance of equities clearly tips in the favor of FDNY.  It is the core requirement of Plaintiffs' job as Firefighters and Emergency Medical Services employees to interact with the public on a constant and unpredictable, emergency basis.  As laid out throughout this Memorandum of Law, the City's public health experts, who are charged with ensuring the safety and wellbeing of the City's residents, determined that the most effective means of containing the deadly COVID-19 pandemic is through vaccination. The COH Order's preliminary paragraphs provide a salient and unassailable predicate for making the mandate, including that the U.S. Centers for Disease Control and Prevention extols vaccination as the primary strategy to stop the spread of COVID-19.  Simply put, the COH Order is fully premised

on potentially saving lives, protecting public health, and promoting public safety. The harm the COH Order seeks to prevent here, the death or serious illness of New York City citizens, is not reversible.

By contrast, Plaintiffs here, who were taken off of FDNY payroll 25 days before filing this "emergency application," are not in danger of irreparable harm. Should they succeed, they can be made whole and compensated. In light of the foregoing, it is plain that the equities tip heavily in favor of the FDNY. As such, Plaintiffs' request for a preliminary injunction should be denied.

### H.  AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Courts must also consider whether the granting of the requested relief contravenes the public interest.  Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115 (2d Cir. 1975). The Supreme Court has recognized that stemming the spread of COVID-19 is a compelling public interest. Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63, 67 (2020). Thus, maintaining the status quo in this case, and refraining from ordering FDNY to return the unvaccinated plaintiffs to payroll when the FDNY cannot permit them to perform work, is a compelling public interest that militates against imposing an affirmative injunction.  Finally, paying plaintiffs when they are prohibited from performing any work could potentially run afoul of Article 8, Section 1 of the New York State Constitution which prohibits gifts of public funds.

As this Court aptly noted in the Broecker decision, supra "[u]ltimately, it is up to local government, 'not the courts, to balance the competing public health and business interests[,]" and here, the City of New York and the FDNY have done so in requiring that its employees be vaccinated to contain the COVID-19 pandemic. Broecker, Dkt. No. 33 at 27 (internal citations omitted).  As such, the instant application should be denied and, as in

<u>Broecker,</u> plaintiffs should be required to show cause why their Complaint should not be dismissed.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be denied.

Dated:     New York, New York
            November 29, 2021

GEORGIA M. PESTANA
Corporation Counsel of the
  City of New York
Attorney for Defendants FDNY and Nigro
100 Church Street, Room 2-100
New York, New York 10007
212-356-4015

By: _____/s/_____
    Andrea O'Connor
    Assistant Corporation Counsel