# EXHIBIT D

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 2 of 23 PageID #: 202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
In the Matter of the Application of ANDREW ANSBRO,
as President of the Uniformed Firefighters Association
(UFA),

                                                    Index No.

                                    Petitioner,    **VERIFIED PETITION**

For a Judgment Pursuant to Article 78 of
the Civil Practice Law and Rules, vacating the mandatory
vaccination order issued by Respondents for all City
employees to the extent that it is applied to firefighters, fire
marshals, marine pilots and marine engineers employed by
the Fire Department of the City of New York,

                        -against-

Bill de Blasio, as Mayor of the City of New York; The City
of New York; The New York City Department of Health
and Mental Hygiene; and the Fire Department of the City of
New York,

                                    Respondents.
------------------------------------------------------------------------X

    Petitioner, Andrew Ansbro, as President of the Uniformed Firefighters Association (UFA),

on behalf of his union members, as and for his Petition, pursuant to Articles 78 and 63 of the

Civil Practice Law and Rules, to vacate the arbitrary, capricious and unlawful order of the New

York City Commissioner of Health and Mental Hygiene, dated October 20, 2021, requiring

COVID-19 vaccinations by 5:00 p.m. on October 29, 2021 for virtually all city employees, to the

extent that it applies to UFA members (collectively referred to as herein as "firefighters") and to

enjoin Respondents from implementing that order so as to:

    (a) Prevent the summary discipline, in the form of forced unpaid leave and eventual

        termination of UFA members if they remain unvaccinated, which discipline would be

        arbitrary, capricious and unlawful and a violation of the members' due process rights;

1

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 3 of 23 PageID #: 203

(b) Prevent the violation of bodily integrity for those employees who would be forced to undergo vaccination without due process of law.

(c) Prevent the arbitrary, capricious, unlawful and medically unnecessary exposure of employees to the dangers posed by vaccination when those employees have previously contracted and survived the COVID-19 virus and who have therefore produced antibodies that provide at least the same or greater protection against reinfection as would be provided by vaccination; and

(d) Prevent the arbitrary, capricious and unlawful denial of valid medical or religious exemptions under the vaccine mandate as conceived by Respondents.

## PRELIMINARY STATEMENT

1. On October 20, 2021, the Commissioner of Health and Mental Hygiene of the City of New York issued an Order annexed hereto as Exhibit A, mandating that nearly all City employees submit proof of at least one dose of COVID-19 vaccine by 5:00 p.m. on October 29, 2021. A subsequent "FAQ" sheet (herein referred to as "Guidance") issued by the City (Exhibit B) makes clear that those who fail to comply or seek a reasonable accommodation by October 27, 2021, would be placed on leave without pay status (LWOP) and would eventually be terminated "in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement." (Exhibit B, p. 13).

2. The draconian Order and Guidance were issued without any negotiation with the labor unions representing the affected employees. Indeed, it was issued at a time

2

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 4 of 23 PageID #: 204

when COVID-19 infection rates in the City of New York are low and the pandemic appears well under control. For example, on October 21, 2021, there were only 1187 new cases of COVID and a 7-day average of 1283 cases, compared to 2,702 new cases on April 14, 2021 and a 7-day average of 3,247 cases. (Data Obtained From New York Times Chart, updated 10/26/21)).

3. More importantly, the challenged mandate ignores the fact that commencing on September 13, 2021, Respondents implemented a "VAX-TEST" program in city agencies, including the FDNY, that required employees to be vaccinated against the COVID-19 virus <u>or</u> submit to weekly COVID-19 PCR diagnostic tests to prove they were negative for the virus.

4. The VAX-TEST policy has been very successful and nothing has happened since its inception to justify the new vaccination mandate. FDNY operations have proceeded smoothly since September 13, 2021 and there is no proof of increasing COVID-19 in the FDNY ranks. Indeed, I am informed that unvaccinated FDNY firefighters have not contracted COVID-19 at any rate higher than those vaccinated. The Respondents have produced no evidence that the virus is increasing in firehouses or the public, due to exposure to firefighters since the VAX-TEST has been in place. The vaccination mandate also ignores the scientifically proven fact that firefighters who have previously contracted the virus and are no longer infected, have a natural immunity, through production of antibodies, that it is at least as effective as the authorized vaccines in preventing reinfection. Nothing in the challenged mandate nor the subsequent guidance even mentions, much less addresses, the antibody immunity issue.

3

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 5 of 23 PageID #: 205

Approximately 70 percent of the about 11,000 firefighters and fire officers in the FDNY have previously had COVID-19 and are no longer symptomatic. Thus, they presently possess natural immunity from further infection.

5.   The imposed policy is also wholly inadequate in providing reasonable accommodation for medical, religious or other potential bases for exemption. The Guidance (Exhibit B) addresses "reasonable accommodation" by initially stating that "medical or religious accommodations will only be granted in limited circumstances" (See Exhibit B, p. 6). It gives only limited "guidance" on the medical evidence that will be accepted to qualify and virtually no guidance for the religious exemption. The policy then directs employees to seek accommodations by speaking to "their EEO officer regarding potential reasonable accommodation." The FAQ also requires that employees apply for reasonable accommodation by October 27, 2021, only 7 days after a new mandate was promulgated and even less than 6 days after the FAQ was published. Employees who apply after October 27th will be placed on LWOP status until the reasonable accommodation application is decided, including appeals.

6.   The challenged Order is also a violation of due process rights of unvaccinated UFA members, whether previously infected or not, by completely depriving those who decline vaccination of their ability to perform their chosen occupation as professional firefighters. In doing so, they are being deprived of their property rights without due process of law under the New York State Constitution, Article 1, Section 6 and New York Civil Service Law, Section 75. Unlike previous

4

Case 1:21-cv-06586-KAM-CLP Document 15-4 Filed 11/29/21 Page 6 of 23 PageID #: 206

challenges to the Mayor's vaccination mandate by educational professionals, the individuals represented by the UFA who refuse vaccination will not only have a difficult time finding jobs as professional firefighters or fire marshals outside of the City of New York, they will not be able to find those jobs <u>at all</u>.

7. There are very few paid professional fire departments in the State of New York and all have maximum age requirements as well as Civil Service testing procedures and generally significantly less compensation than received by FDNY members.  It is simply not realistic to believe that UFA members that lose their jobs due to the October 20, 2021 mandate would be able to be reemployed as professional firefighters.  Thus the challenged order violates the rights of UFA members by ignoring their bodily integrity, their right to decide which medical procedures they will undergo and their vested property interest in their occupation, without due process of law.

8. The vaccine mandate is ill-conceived, was hurriedly promulgated, fails to fairly treat firefighters and is arbitrary, capricious and unlawful.

9. Accordingly, emergency relief from this Court is required.

## PARTIES

10. The UFA is an unincorporated association with its principal place of business in the City and County of New York.  It is a labor union and the exclusive bargaining agent for all FDNY firefighters.

11. Petitioner Andrew Ansbro is the duly elected President of the UFA.

12. Respondent Bill De Blasio is the Mayor of the City of New York.

5

13. Respondent City of New York is a municipal corporation with its principal office located in New York County.

14. Respondent Department of Health and Mental Hygiene (DOHMH) is an agency of the City and responsible for the health of New York City residents. It is located in the City and County of New York.

15. Respondent FDNY is a city agency with its principal place of business located in the County of Kings, City of New York.

## JURISDICTION AND VENUE

16. This Court has jurisdiction to hear this matter pursuant to Articles 78 and 63 of the CPLR.

17. No prior application for this relief has been made to this Court.

18. Venue is proper pursuant to CPLR 7804(b) and CPLR 506(b), because the material events in this matter otherwise took place principally in New York County.

19. Venue is also proper because Respondents City and DOHMH are located in New York County.

## FACTS

20. On March 12, 2020, New York City Mayor Bill de Blasio declared a state of emergency for New York City, based upon the health risks posed by the COVID-19 pandemic.

21. FDNY firefighters, despite the then risks inherent in sleeping, eating and working in firehouses as well as responding to fires and medical and other emergencies,

6

never wavered in their commitment and dedication to the safety of New Yorkers, even at the height of the pandemic. They did their jobs.

22. I am informed that as a result, approximately 70 percent of the nearly 11,000 firefighters and fire officers contracted the COVID-19 virus. Thankfully, only 1 firefighter has died. The others survived and still are protecting the citizens of the City.

23. There is no evidence that the infection rates of firefighters have increased or are worse for unvaccinated versus vaccinated firefighters. Indeed, it currently appears that only a very small percentage of the firefighters have the virus - far less than at the apex of the pandemic.

### "VAX-TEST"

24. In a reasonable effort to control the virus amongst city employees, Mayor de Blasio, on August 31, 2021 issued Executive Order 78 (Exhibit C) requiring that, commencing on September 13, 2021, city employees be vaccinated against COVID-19 or submit weekly proof of a negative COVID-19 PCR test.

25. The FDNY thereafter adopted a process whereby firefighters who failed to submit proof of vaccination could continue working as long as they had negative PCR test results. Those PCR tests were conducted on city time and at the city's expense.

26. What is particularly frustrating regarding the mandate we challenge herein, is that it completely fails to recognize the success of the VAX-TEST program to date.

7

27. As noted above, the rate of infection in firefighters has been steadily decreasing and there is no evidence that unvaccinated firefighters are contracting COVID-19 at a higher rate than those that have not been vaccinated.

28. Nevertheless, on October 20, 2021 the challenged mandate was issued. It would summarily end the successful VAX-TEST program and replace it with a process that would potentially put a significant number of firefighters on unpaid leave while facing termination with loss of income, health coverage and pension benefits.

29. The mandate completely fails to explain why the VAX-TEST policy is insufficient and needs to be discarded. Indeed, nothing has changed regarding the transmission of COVID-19 since the inception of the VAX-TEST policy, except that the policy has been successful. The Mayor has offered no evidence to justify getting rid of the VAX-TEST policy and replacing it with a blanket vaccine mandate. The decision to do so is irresponsible and irrational. The vaccine mandate would unnecessarily deprive firefighters of their vested property right to the employment in violation of due process of law.

## NATURAL IMMUNITY

30. The vaccination mandate, while claiming it is "necessary for the health and safety of the city and its residents" (Exhibit A, pp 2-3) and rescinding the VAX-TEST policy, offers no explanation or rationale for compelling firefighters to be vaccinated even though they have previously acquired natural immunity from the virus.

8

31. There is substantial evidence that immunity acquired by having and surviving COVID-19, is at least as effective as vaccine required immunity.

32. An Israeli study of over 187,000 unvaccinated COVID-19 positive individuals, who tested positive between June 1, 2020 and September 30, 2020 and were thereafter monitored through March 20, 2021, showed only 894 (0.48 percent) were re-infected.[1]

33. A similar study by the Cleveland Clinic of 1,359 infected individuals who were unvaccinated, which study was conducted over a 5-month period, showed zero reinfections and concluded that individuals who had the virus and recovered were "unlikely to benefit from COVID-19 vaccination."[2]

34. Even more persuasive is the very thorough and thoughtful Affidavit of Dr. Jayanta Bhattacharya, M.D. annexed hereto as Exhibit "D".  Dr. Bhattacharya is the former President of Medicine at Stanford University School of Medicine and current Professor of Health Policy at that school.

35. The doctor supplied the attached Affidavit without compensation, stating his participation has "been motivated solely by [his] commitment to public health." Exhibit "D", p. 3)

36. In his Affirmation, Dr. Bhattacharya carefully reviews the relevant scientific data regarding the spread of the COVID-19 virus and its variants.  He focuses on the dangers or lack thereof of vaccination for previously infected employees and

---

[1] Yair Goldberg, et al., Protection of Previous SARS-CoV-2 Infection is Similar to that of BNT 162b Vaccine Protection: A 3-Month Nationwide Experience In Israel April 24, 2021)(Available at https://www.medrxiv.org/content/10.1101/2021.04.20.21255670v1.full-text).
[2] Nabin K. Shrestha, et al., Necessity of COVID-19 Vaccination in Previously Infected Individuals (June 5, 2021) (Available at https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v2.full-text).

9

whether the natural immunity they possess is sufficient to eliminate the need for vaccination.

37. On page 4 of his Affidavit, the doctor states:

"My opinions are partly summarized in a recent article I published and which I reaffirm here: "[R]ecovered COVID patients have strong long-lasting protection against severe disease if reinfected, and evidence about protective immunity after natural infection is at least as good as from the vaccines. Hence, it makes no sense to require vaccines for recovered patients. For them, it simply adds a risk, however small, without any benefit."

I also offer my opinion that certain individuals may face heightened risk of vaccine side effects. Though the vaccines are safe for most patients, the FDA has identified a heightened risk of myocarditis and pericarditis after vaccination with the mRNA vaccines – especially for young men. It has also identified a heightened risk of clotting abnormalities in young women taking the adenovirus vector vaccine. Even more importantly, the vaccine has not been thoroughly tested for safety and efficacy in patients with certain chronic conditions such as Multiple Sclerosis, so there is still considerable scientific uncertainty about these heightened risks for some patients.

I also conclude, within a reasonable degree of medical certainty, that the FDNY can safely accommodate COVID-recovered workers by exempting them from vaccine requirements since they possess better immunity via prior infection than a vaccinated worker who never had COVID possesses from vaccination.

The FDNY could also within a reasonable degree of medical certainty, safely accommodate those employees who have not previously been infected with from COVID-19 but have religious or medical reasons for not wanting the vaccine by requiring daily symptom checking paired with rapid antigen tests to confirm if a worker is infectious. To reduce the risk from asymptomatically infected workers, the FDNY can require workers to conduct weekly PCR or antigen tests, though if it adopts this accommodation, it would be best practice to require it of both vaccinated and unvaccinated workers since both groups can spread the virus when infected and, rarely, asymptomatically. If implemented, these accommodations would keep FDNY 's workforce and the public they serve as safe as possible from the risk of COVID infection, while preserving the employment of thousands of loyal FDNY members."

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 12 of 23 PageID #: 212

38. These conclusions are not based upon speculative theories but are based on scientific research by a respected professional. Dr. Bhattacharya is frequently published and holds MD and PhD degrees from Stanford University and he has "dedicated" his "professional career to the analysis of health policy, including infectious disease epidemiology policy and the safety and efficacy of medical intervention." (Exhibit "D" p. 2).

39. Thus, Dr. Bhattacharya provides sound and persuasive evidence of the arbitrary nature of the challenged order which provides no vaccine exception to the many firefighters who have previously contracted the COVID-19 virus and survived and developed a natural immunity to it.

40. The vaccine mandate of October 20, 2021 contains no evidentiary data to support its broad scope or application to firefighters and fails to address that firefighters are not a significant source of the spread of COVID-19[3]. It does not address the issue of widespread natural immunity nor the undisputed success of the VAX-TEST policy.

## STATUTORY VIOLATIONS

41. The broad punitive scope of the vaccine mandate not only is arbitrary and capricious, it also violates the rights of firefighters under the statues prohibiting discrimination on the basis of religion or disability that require the City, through the FDNY, to provide reasonable accommodation to employees, who due to religious or medical reasons cannot fulfill the conditions of their jobs.

---

[3] According to a December 11, 2020 report on NY1, entitled "What's New York's Contact Tracing Show" (available at https://Spectrumlocalnews.com/NYS/Central-NY/NY.State-of-Politics/2020/12/11/). The State's Contact Tracing Shows that the Public Sector (Referred to as all police, fire, EMS, and military responders) amounted to just 1% of COVID-19 transmissions in New York State).

11

(The New York State and New York City Human Rights Laws and the New York State Constitution, Article 1 Section 6).

42. The United States Equal Employment Opportunity Commission (EEOC) has issued regulations and guidance that require, in appropriate circumstances an employer to provide reasonable accommodation for employees who, because of a disability or a sincerely held religious belief, practice or observance, do not get vaccinated for COVID-19, unless providing an accommodation would pose "an undue hardship on the operation of the employer's business"[4]

43. The New York City Commission on Human Rights has adopted the relevant provisions of the EEOC COVID-19 guidance.[5]

44. While the vaccine mandate itself (Exhibit A) states in paragraph 8 on page 5: "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law", the guidance contained in the FAQ (Exhibit B, page 6) limits accommodation to "documented medical or religious reasons."

45. Neither the mandate nor the FAQ give sufficient information on the type of accommodation available or how to get it.

46. Moreover, the arbitrary nature of the mandate regarding reasonable accommodation is clearly illustrated by the fact that the FAQ guidance was issued on 10/21/2021 and requires the application for a reasonable accommodation to be submitted on or before October 27, 2021. If an employee fails to meet that

---

[4] U.S. EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act and other EEO Laws.
[5] NYCCHR-COVID-19-Employment Protection (July 2, 2021) (NYCCHR Guidance), available at https://www.NYC.GOV/site/CCHR/COMMUNITY/COVID-EMPLOYMENT.page).

12

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 14 of 23 PageID #: 214

deadline, he will be placed on leave without pay until his application for reasonable accommodation is decided, including any appeals (Exhibit B-paragraph 25-page 7.)  This process is hardly the collaborative effort between an employer and employee contemplated by the law for achieving reasonable accommodation. Nor does the Mandate or Guidance give sufficient time for employees to carefully prepare their reasonable accommodation requests.

47. The arbitrary and capricious nature of the October 20, 2021 mandate and FAQ Guidance, is well illustrated by the manner in which they propose to treat employees who refuse vaccination without seeking exemption.

48. The mandate states that said employees "must be excluded from the premises at which they work beginning on November 1, 2021." (Exhibit A, p. 3)

49. The FAQ expands upon the consequences of non-compliance by providing in paragraph 51 (p. 13) those employees "will be placed on Leave Without Pay (LWOP)."  It then ominously adds: "Employees who refuse to comply will be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement."

50. With regard to the question of "How long should an employee be on Leave Without Pay (LWOP) before termination proceedings begin?", the FAQ (p.13, paragraph 52) states: "Absent any collective bargaining agreement providing for other procedures, employees should be placed on LWOP effective November 1 and may be subject to discipline or other adverse employment action.  Further guidance will be forthcoming."

13

Case 1:21-cv-06586-KAM-CLP Document 15-4 Filed 11/29/21 Page 15 of 23 PageID #: 215

51. These provisions and the recent actions by the Fire Department promulgated pursuant thereto raise as many questions as they answer.

52. Under the Civil Service Law Section 75 and the collective bargaining agreement between the UFA and the City, firefighters can be suspended without pay for a maximum of 30-days.

53. Nonetheless, there appears to be no limit on the number of days a firefighter can be placed on LWOP status, pursuant to the vaccination mandate.

54. If the new policy is alleged to recognize the law and bargaining agreement, as it must, there is no explanation for the Fire Department claim that employees can be placed on LWOP for an unlimited time. There is also no explanation of when or if a firefighter will receive disciplinary charges or where or when those charges will be adjudicated.

55. Moreover, I am informed that the Fire Department has asserted that even though an employee on LWOP status is not paid and does not receive pension contribution or annuity fund contributions from the City and is not credited with the service time spent on LWOP toward his seniority or service credit, that employee is not permitted to work in any other job while on LWOP status. What authority does the city have to prohibit a firefighter, that it doesn't pay or give benefits to, from supporting himself and his family during that period? Yet, the Respondents have the temerity to claim that the Mandate and FAQ are rationally based. In fact, as applied to firefighters, they are anything but.

14

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 16 of 23 PageID #: 216

## **IRREPERABLE HARM**

56. There is no doubt that implementation of the vaccine mandate will cause irreparable harm to firefighters.

57. If a firefighter is forced to take the vaccine against his sincerely held medical, religious or liberty concerns and before a court determination is made declaring the mandate illegal, the harm will be irreparable.

58. Further, if a firefighter refuses to take the vaccine he will lose his salary, health benefits, seniority and pension as well as related benefits causing obvious irreparable harm to him and his family.

## **BALANCE OF EQUITIES**

59. Measured against the specter of irreparable harm is the fact that an injunction will not harm the public health and safety of the City or the health of the firefighters.

60. The current VAX-TEST policy is working. Firefighters are not spreading the virus to themselves or the public.

61. The Mayor waited months to issue the challenged mandate-hardly a basis to claim an urgent need for the implementation of the new policy. The mandate was ill-conceived and seemingly designed to give firefighters and others as little time as possible to oppose it or take advantage of the lawful reasonable accommodations they are due.

62. The mandate fails to consider the natural immunity of a large percentage of firefighters and the scientific evidence of potential harm from vaccination.

63. This Court should temporary restrain imposition of the mandate and ultimately permanently enjoin its use.

15

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 17 of 23 PageID #: 217

## FIRST CAUSE OF ACTION

64. Petitioner repeats reiterates and re-alleges the allegations contained in paragraphs 1 through 63 as if set forth more fully at length herein.

65. Respondents have failed to show that their vaccine mandate is rational as applied to FDNY firefighters, particularly in light of its lack of recognition of natural immunity, obtained by prior COVID-19 exposure; its lack of recognition of the risks of vaccination and its total disregard for the success of the existing VAX-TEST policy.

66. The mandate provides unreasonably short deadlines for submitting appropriate requests for reasonable accommodation and it fails to provide for an employer/employee collaboration process for evaluating reasonable accommodation requests.

67. Finally, it fails to provide a reasonable or lawful penalty for refusing vaccination by initially putting firefighters on indefinite leave without pay status and then proceeding directly to termination, the ultimate penalty for the employee and his family.

## SECOND CAUSE OF ACTION

## VIOLATION OF STATE AND CITY HUMAN RIGHTS LAWS

68. Petitioner repeats reiterates and re-alleges each and every allegation contained in paragraphs 1 through 67 as if set forth more fully at length herein.

16

69. New York State and New York City Human Rights Laws prohibit discrimination by an employer against an employee in the terms, conditions and privileges of employment based upon disability or religious creed.

70. The statute requires the employer to provide reasonable accommodation of employees' sincere religious beliefs and practices, unless it would impose an undue burden on the employer.

71. Any exemption request by an employee must be evaluated through an interactive process to determine whether accommodation can be provided and the employee must be given a reasonable opportunity to submit his request.

72. Neither the challenged mandate nor the FAQ guidance enlightens the employees on what medical or religious exemptions will be granted or explains what the nature of the available accommodations will be. The only thing they seem to state clearly is the unreasonable short deadline for seeking the accommodation.

73. These failures again illustrate the arbitrary and capricious nature of the mandate and the efforts by Respondents to rush it through without proper consideration of the employee's rights.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE DUE PROCESS CLAUSE OF ARTICLE 1 SECTION 6 OF**
**THE NEW YORK STATE CONSITUTION**

74. Petitioner repeats reiterates and re-alleges the allegations contained in paragraphs 1 through 73 as if set forth more fully at length herein.

75. Article 1, Section 6 of the New York State Constitution prohibits the deprivation of a person's "life, liberty or property without due process of law."

17

76. Firefighters have a property interest in their employment and a personal liberty interest in their bodily integrity.

77. These "interests" are protected by the State Constitution's due process provisions.

78. Individuals also have the right to refuse medical treatment. That right is certainly entitled to the protection under the due process doctrine when the long-term effects of the COVID-19 vaccinations are still unknown.

79. Moreover, as noted in the Affidavit of Dr. Bhattachayra (Exhibit D), certain potentially serious medical conditions are known risks of the COVID vaccines including pericarditis, myocarditis and blood clotting abnormalities.

80. The Respondents should not be permitted to condition a firefighter's right to continued employment on the forfeiture of his constitutional right to maintain his bodily integrity and to refuse medical treatment.

81. There should be no doubt that firefighters have a vested property interest in their employment as well. There certainly has never been a reason to expect that such employment would be conditioned upon taking an untested vaccine.

82. For the foregoing reasons, Petitioner is entitled to a declaration that the recently imposed vaccine mandate is void as arbitrary and capricious and a deprivation of the constitutional rights of firefighters. Petitioner is entitled to a temporary, preliminary and permanent injunction enjoining Respondents from the implementation of the mandate against FDNY firefighters.

## **RELIEF REQUESTED**

Wherefore Petitioner requests that this Court enter a judgment:

18

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 20 of 23 PageID #: 220

(a) Temporarily, preliminary and permanently enjoining and restraining Respondents in any manner or by any means from implementing or enforcing the vaccine mandate against UFA members;

(b) Declaring that, as applied to UFA members, the mandate violates state and city law and is arbitrary and capricious and an abuse of discretion;

(c) Vacating the vaccine mandate as applied to UFA members, as contrary to law, arbitrary and capricious and abuse of discretion;

(d) Awarding Petitioner costs and attorneys' fees;

(e) Granting such other and further relief as this Court may seem just and proper.

Dated:     New York, New York
           October 28, 2021

                                    Respectfully submitted,

                                    SULLIVAN PAPAIN BLOCK
                                    McGRATH COFFINAS & CANNAVO P.C.

                                    By: _____
                                        Michael N. Block
                                    Attorneys for Petitioner
                                    120 Broadway
                                    New York, New York 10271
                                    (212) 732-9000

19

Case 1:21-cv-06586-KAM-CLP Document 15-4 Filed 11/29/21 Page 21 of 23 PageID #: 221

STATE OF NEW YORK   )
                           )SS.:
COUNTY OF NEW YORK  )

ANDREW ANSBRO, being duly sworn, deposes and says:

That I am the President of the Uniformed Firefighters Association (UFA) and petitioner in the within action; that I have read the foregoing **PETITION** and I know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true.

ANDREW ANSBRO

Sworn to before me this
28th day of October, 2021.

Notary Public

SHEILA PETTIT
Notary Public, State of New York
No. 01PE5065793
Qualified in Nassau County
Commission Expires Sept. 16, 2022

Case 1:21-cv-06586-KAM-CLP  Document 15-4  Filed 11/29/21  Page 22 of 23 PageID #: 222

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------X

In the Matter of the Application of
ANDREW ANSBRO, as President of the
Uniformed Firefighters Association(UFA),                    Index No.

                          Petitioner,    **CERTIFICATION OF WORD
COUNT OF VERIFIED
PETITION**

For a Judgment Pursuant to Article 78 of
the Civil Practice Law and Rules, vacating the mandatory
vaccination order issued by Respondents for all City
employees to the extent that it is applied to firefighters, fire
marshals, marine pilots and marine engineers employed by
the Fire Department of the City of New York,

               -against-

Bill de Blasio, as Mayor of the City of New York; The City
of New York; The New York City Department of Health
and Mental Hygiene; and the Fire Department of the City of
New York,

                         Respondents.

------------------------------------------------------------------------X

     Michael N. Block, an attorney duly admitted to practice law in the State of New York

certifies pursuant to Uniform Civil Rules for the Supreme Court Rule 202.8-b that the word count of

the annexed Verified Petition based upon the word count of the word-processing system used to

prepare the Verified Petition is 4488 words in compliance with this provision of the rules.

FILED: NEW YORK COUNTY CLERK 10/28/2021 07:39 PM

NYSCEF DOC. NO. 1

INDEX NO. 159738/2021

RECEIVED NYSCEF: 10/29/2021

Case 1:21-cv-06586-KAM-CLP   Document 15-4   Filed 11/29/21   Page 23 of 23 PageID #: 223

Dated:     New York, New York
           October 28, 2021

                                        Yours, etc.,

                                        SULLIVAN PAPAIN BLOCK McGRATH
                                        COFFINAS & CANNAVO P.C.

                                        By: _____
                                             **Michael N. Block**
                                             *Attorneys for Petitioner*
                                             120 Broadway – 27th Floor
                                             New York, New York 10271
                                             Telephone: (212) 266-4103
                                             Facsimile: (212) 266-4141
                                             Email: **MBlock@TrialLaw1.com**