EXHIBIT G

OFFICE OF COLLECTIVE BARGAINING
BOARD OF COLLECTIVE BARGAINING
----------------------------------------------------------------------x
In the Matter of the Petition for Injunctive Relief

        -between-

UNIFORMED FIREFIGHTERS ASSOCIATION       **BCB - _____ - 21**
OF GREATER NEW YORK, LOCAL 94, *IAFF*,
AFL-CIO,

                Petitioner,       **VERIFIED PETITION FOR**
                                     **INJUNCTIVE RELIEF**
        -and-

THE CITY OF NEW YORK and THE FIRE
DEPARTMENT OF THE CITY OF NEW YORK,

                Respondents.
----------------------------------------------------------------------x

**TO THE BOARD OF COLLECTIVE BARGAINING:**

Petitioner, Uniformed Firefighters Association, Local 94, *IAFF*, AFL-CIO (hereinafter "UFA"), as and for its Verified Petition for Injunctive Relief, by Certilman Balin Adler & Hyman, LLP, by Paul S. Linzer, Esq. and Jennifer A. Bentley, Esq., respectfully alleges the following pursuant to § 1-07 (d) of Title 61 of the Rules of the City of New York Office of Collective Bargaining (hereinafter "OCB Rules"):

1.      Petitioner, the UFA, is the certified bargaining representative of all Firefighters, Fire Marshals, Wipers, Pilots, and Engineers employed in the Fire Department of the City of New York pursuant to the New York City Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3) (hereinafter "NYCCBL") § 12-302. Its principal place of business is 204 East 23rd Street, New York, New York 11010. Its telephone and fax numbers, respectively, are (212) 545-6976 and (212) 683-0710.

2.     Respondent City of New York (hereinafter "City") is a public employer as defined by NYCCBL § 12-303(g) and is a duly constituted political subdivision of the State of New York and at all material times herein was a municipal corporation. Bill de Blasio is the Mayor of the City of New York.

3.     Respondent Fire Department of the City of New York (hereinafter "FDNY" or "Department") is a municipal agency of the City as defined by NYCCBL § 12-303(d), and a mayoral agency as defined by § 12-303(f). Daniel Nigro serves as the Commissioner of the FDNY.

4.     The UFA files this Petition for Injunctive Relief simultaneously with its Verified Improper Practice and Scope of Bargaining Petition (hereinafter "IP Petition") alleging that the City violated NYCCBL § 12-306(a)(1) and (4) and (5) by breaching its duty to bargain in good faith regarding managerial action taken, as well as exercising managerial prerogative in a manner that created a practical impact on the on the members of the UFA.

5.     The UFA files this Petition for Injunctive Relief to enjoin the implementation of the October 20, 2021 Order by the New York City Department of Health and Mental Hygiene (hereinafter "DOHMH Order") through its Commissioner David Chokshi, M.D., mandating that all public sector employees of the City receive a vaccination against COVID-19 by October 29, 2021 and provide proof of same.

6.     The UFA further files this Petition for Injunctive Relief to enjoin the City and FDNY from implementing the October 21, 2021 FDNY Bureau of Operations Order, delineated OPS-21-10-08, with the subject "Covid Vaccine Update" (hereinafter "FDNY Ops Order")

7557721.1

7.     The FDNY Ops Order incorporates the DOHMH Order mandating vaccinations for all City workers, as well as includes a 14-page Frequently Asked Questions ("FAQ") document. *See* IP Petition, Ex. G.

8.     The 10/20/2021 DOHMH Order and the 10/21/21 FDNY Ops Order will collectively be referred to herein as the "Vaccine Mandate".

## BACKGROUND/STATEMENT OF FACTS

9.     The facts giving rise to the instant Petition are more fully set forth in the accompanying IP Petition, dated October 26, 2021, as well as in the Affidavit of UFA President, Andrew Ansbro, annexed hereto as Exhibit "1", but the following is relevant summary.

10.     Currently, UFA members are following a mandate which provides a choice to receive a vaccination and provide proof of same, or to submit to weekly testing for COVID-19.

11.     The current mandate stems from Executive Order No. 78, issued by Mayor de Blasio on August 31, 2021, which became effective for UFA members on or about September 24, 2021, approximately one month ago, following the issuance of FDNY Bureau of Operations Order delineated OPS-21-09-09. *See* IP Petition, Ex. A.

12.     However, quickly changing, the new DOHMH Order issued on October 20, 2021 mandates vaccinations for all City workers and rescinds the choice to submit to weekly testing. *See* IP Petition, Ex. G.

13.     Subsequently, on October 21, 2021, the Department issued the FDNY Ops Order OPS-21-10-08, which incorporates the DOHMH Order. *Id.*

14.     The DOHMH Order and the FDNY Ops Order essentially imposes the requirement that all unvaccinated UFA members either become vaccinated, or face the dire

3

7557721.1

consequences of losing their revered and respected livelihood, the profession for which they have been tested for, selected for, trained for and approved by the City to perform.

15.     Adding insult, this decision of choosing their livelihood or sacrificing their personal freedom of choice in their medical decisions must be made by these UFA members in a mere few days, on October 29, 2021.

16.     The imposition of such an unreasonable deadline is downright unconscionable and will cause irreparable harm to the UFA membership who have served on the frontlines of this pandemic without complaint and have contracted the disease themselves.

17.     For almost two years, these members bravely faced the disease head-on, sacrificing themselves as well as their families' lives in exposing themselves to and contracting the disease while heroically serving the public.

18.     Now that the horrors of the pandemic continue to abate, the members are being told by City leaders that they must make a choice between personal freedom or risk losing their cherished professions, all on a cruel timetable. *See* Ansbro Aff., Ex. 1, ¶¶ 14, 15, 18.

19.     Having to face this choice when there exists a current and proven alternative, such as weekly testing, the Vaccine Mandate only serves to create irreparable harm for the UFA membership.

20.     Moreover, the UFA itself will also face irreparable harm due to the forced inability to meaningfully and zealously negotiate as the certified bargaining representative to assure that procedures are in place to protect the membership from the impact of this drastic and punitive decision by the City. *See* Ansbro Aff, Ex. 1, ¶¶ 15-16, 20, 22.

21.     This Vaccine Mandate includes issues that must be negotiated including, but not limited to, the process by which requests for medical and religious exemptions are handled

4

including the appeals process; leave of absence and related concerns regarding length of time and continuance of health insurance, due process rights and compensation.

22.    Based upon the issues arising from the Vaccine Mandate, it is supremely obvious that injunctive relief is entirely warranted in this this instance.

## **STANDARD OF REVIEW**

23.    It is well-settled that injunctive relief will be issued when:

> (1) There is reasonable cause to believe that an improper practice has occurred; and

> (2) It appears that immediate and irreparable injury, loss or damage may result thereby, (1) rendering a resulting judgment on the merits ineffectual and (ii) necessitating maintenance of, or return to, the status quo to provide meaningful relief.

*Fire Alarm Dispatchers Benevolent Assn.*, 55 OCB 1, at 9 (BCB 1995)).

24.    As to the first prong, the Board of Collective Bargaining (hereinafter "BCB" or "Board") will examine the improper practice charge to determine whether there is a likelihood of success on the merits; however, the improper practice charge does not have to "be definitively proven at this early stage…nor does it mean that we must, at this stage, resolve all factual disputes… The Board must be able to find reasonable cause to believe that an improper practice has occurred." *Archibald*, 55 OCB 12, at 7 n. 1 (BCB 1995).

25.    In determining whether there is reasonable cause to believe whether an improper practice has occurred, the standard utilized by the Board is less stringent than the standard enunciated by the New York State Courts, which requires a clear showing of likelihood of ultimate success on the merits, and a balancing of equities in the moving party's favor. *See Patrolmen's Benevolent Assn. v. City of New York*, 765 N.Y.S.2d 152, 155 (Sup. Ct. N.Y. Co April 29, 2003).

7557721.1

26.     In *Patrolmen's Benevolent Association*, the Court held that "the statutory authority for interim judicial relief in this proceeding eliminates the common law requirements for preliminary injunctions that pertain to other actions, which include a clear showing of the elements of likelihood of their success on the merits and balancing of the equities in their favor." *Id.*

27.     As to the second prong, the Board will examine "whether claims of irreparable harm are supported by apparently <u>bona fide</u> allegations of probative fact." *Archibald*, 55 OCB 12, at 7 n. 2 (emphasis in original).

28.     As outlined below, the specific facts of this matter as presented by the UFA overwhelmingly meets the Board's standard for injunctive relief.

29.     Accordingly, based on the facts set forth herein, the UFA has satisfied the standard for injunctive relief, and the Board should determine that such relief is warranted in this matter.

### THERE IS REASONABLE CAUSE TO BELIEVE
### THAT AN IMPROPER PRACTICE HAS OCCURRED

30.     The UFA has demonstrated a likelihood of success on the merits of the accompanying Verified Improper Practice and Scope of Bargaining Petition.

31.     For this requirement to be met, the Board does not require that the Improper Practice charge be proven at this stage. *Id.*

32.     In the instant matter, the City and FDNY unilaterally implemented the October 20, 2021 DOHMH Order and the October 21, 2021 FDNY Ops Order mandating COVID-19 vaccination without bargaining, and without reaching an agreement with the UFA on the mandatory subjects of bargaining implicated by these Orders.

6

33. The Vaccine Mandate changes the terms and conditions of employment of UFA members, which automatically triggered an obligation to negotiate; however, it is indisputable that the City and FDNY instituted these Orders without bargaining with the UFA.

34. The Vaccine Mandate further makes any meaningful impact bargaining between the parties unrealistic due to the forced October 29, 2021 deadline which will have devasting consequences.

35. The UFA is likely to succeed in its claim before the Board that the actions undertaken by the City and FDNY violated § 12-306(a)(4) of the NYCCBL.

36. Topics to be mandatorily negotiated arising from the Vaccine Mandate include issues relating to members' privacy, medical choice, confidentiality, discipline, leave, accruals, termination, compensation, benefits, work rules and overtime.

37. Based on the fact that the City unilaterally imposed the Vaccine Mandate, the City has breached its affirmative obligation under the NYCCBL to bargain over mandatory subjects of bargaining and accordingly, the City has violated NYCCBL § 12-306(a)(4).

38. Moreover, because the City has refused to discuss, negotiate and/or bargain with the UFA regarding the Vaccine Mandate during the period of *status quo*, the City has breached its affirmative obligations to maintain the *status quo* pursuant to NYCCBL, and to negotiate over mandatory subjects of bargaining.

39. Accordingly, a determination on the merits of the improper practice allegations would be ineffectual unless the *status quo* is maintained.

## ABSENT A PRELIMINARY INJUNCTION, THE CITY'S CONTINUED ACTIONS IN IMPOSING THE VACCINE MANDATE WILL CAUSE IRREPARABLE HARM TO THE UFA'S MEMBERSHIP

40.     In determining the existence of irreparable harm, the Board "will focus on examining whether, on the record before us, claims of irreparable harm are supported by apparently *bona fide* allegations of probative fact…" *Id.* at Fn2.

41.     The specific facts raised in the IP Petition meet the Board's standard for injunctive relief; therefore, pending the outcome of the IP Petition, the granting of an injunction is an appropriate remedy.

42.     The IP Petition demonstrates how the City and FDNY have unilaterally changed many terms and conditions of employment in imposing the drastic Vaccine Mandate, and have disregarded the requirement to negotiate the mandatory subjects of bargaining that are implicated by same, in lieu of the vaccine or testing choice mandate which is currently in place for the UFA membership.

43.     Imposition of the Vaccine Mandate was done in total disregard of the members' livelihoods, including their health and safety, civil service job security, financial implications, and disciplinary consequences; thus, the Vaccine Mandate is downright punitive and unconscionable.

44.     It is well settled that a threatened loss or reduction in job benefits satisfies the irreparable injury requirement. *See Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir. 1979).

45.     In addition, this new mandate carries severe penalties that are disciplinary in nature by requiring members to go on Leave Without Pay ("LWOP") and face termination which clearly implicates mandatory subjects of bargaining involving financial consequences. *See* IP Petition at Ex. G.

7557721.1

46.     These types of consequences clearly constitute irreparable harm to UFA members.

47.     Further, the UFA's membership faces additional irreparable harm unless procedures are in place to protect their private medical information and to assure there must be confidentiality protections to prevent dissemination to other entities.

48.     The consequences of this Vaccine Mandate will result in irreparable harm in terms of constitutional deprivation of liberty, due process, discipline, financial implications and retirement decisions.

49.     Therefore, it is vital that an injunction be secured to prevent the irreparable harms facing the UFA membership.

50.     Should the UFA prevail in its IP Petition, the Board will be unable to remedy the harm which will have resulted, and may result from the City's continued managerial actions in continuing with this mandate.

51.     Neither the Board nor the City can place a value on what is at stake for the UFA membership and thus, any consequences which may result if an injunction is not put into place, cannot be remedied monetarily thereafter.

52.     Moreover, this Board has also held that a denial of a union's ability to participate in the negotiation process constitutes irreparable harm. *See Patrolmen's Benevolent Ass'n v. City of New York,* 196 Misc.2d 396, 401 (Sup. Ct. N.Y. Co. 2003) (enjoining employer from transferring a union delegate because it "undermines his ability to represent those members").

53.     The Vaccine Mandate has led to mass confusion with unending questions from the membership on vital issues affecting their lives and their families' lives interfering with the UFA's essential function to represent its membership.

9

54.     Thus, the UFA is suffering and will suffer irreparable harm to its primary statutory purpose and will diminish the trust of the membership if the collective bargaining process is allowed to be circumvented in this manner.

55.     The extremely tight deadline of October 29, 2021 imposed by the Vaccine Mandate is not enough time to resolve, let alone contemplate, all of the various issues that such a mandate raises regarding mandatory topics of negotiation.

56.     Finally, the NYCCBL §§12-306 and 12-307 expressly afford public employee unions the right to bargain over the impact of the City's decisions when they adversely affect the working conditions of unit employees.

57.     The impact of these changes on the Petitioners' members is clear, indisputable, and apparent on the face of this Injunctive Relief Petition, as well as the accompanying IP Petition.

58.     The UFA will succeed in showing that the City's failure and refusal to bargain with the Petitioners over the continued implementation of the Vaccine Mandate constitutes an Improper Practice under the NYCCBL.

59.     If injunctive relief is not granted, the ultimate decision on the merits of the IP Petition will be rendered ineffectual.

60.     The severe implications which will result if the *status quo* is not maintained cannot be remedied with monetary relief.

61.     Unless the City's action is enjoined, Petitioners' members will continue to face irreparable injury as a result.

10

62.     The Board's criteria for granting injunctive relief is satisfied as there is reasonable cause to believe that an Improper Practice has occurred and this unilateral change in imposing the Vaccine Mandate will result in irreparable harm to both the UFA and its membership.

63.     Accordingly, unless this Board commences an action, or authorizes the Petitioner to commence an action on its behalf, to enjoin the City and FDNY's further implementation and utilization of the Vaccine Mandate implemented by the October 20, 2021 DOHMH Order and the October 21, 2021 FDNY Ops Order, in accordance with the NYCCBL, the UFA will have no adequate remedy at law.

64.     There has been no prior application for the relief sought herein.

**WHEREFORE**, based upon the foregoing factual allegations, and the accompanying IP Petition, as well as the exhibits annexed thereto, the Petitioner respectfully requests the Board to determine that:

1.     Reasonable cause exists to believe an improper practice has occurred;

2.     Immediate and irreparable injury, loss or damage has resulted and will continue to result thereby rendering a resulting judgment on the merits ineffectual;

3.     The Board will petition the New York State Supreme Court, County of New York for injunctive relief, or alternatively authorize the Petitioner to commence an application for injunctive relief in the New York State Supreme Court, County of New York; and

4.     Any other and further relief must be ordered as may be just and proper.

11

Dated: East Meadow, New York
      October 27, 2021

CERTILMAN BALIN ADLER & HYMAN, LLP

By:                                                 

Paul S. Linzer, Esq.
Jennifer A. Bentley, Esq.
Attorneys for Uniformed Firefighters Association ("UFA")
        90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7182

TO:    NEW YORK CITY OFFICE OF LABOR RELATIONS
        Attention: Steven Banks, Esq., General Counsel
        22 Cortlandt Street, 15th Floor
        New York, New York 10007

        FIRE DEPARTMENT OF THE CITY OF NEW YORK
        Attention: David Zweifler, Esq., Director of Labor Relations
        Fire Department, City of New York
        9 Metrotech Center, Room 4W-13
        Brooklyn, New York 11021

7557721.1

## ATTORNEY'S AFFIRMATION

I, PAUL S. LINZER, the undersigned, am an attorney admitted to practice in the State of New York, and am the attorney of record for the UFA in the within action. I have read the foregoing Verified Petition For Injunctive Relief and know the contents thereof; the same is true to my own knowledge except as to matters therein alleged to be on information and belief, and to those matters I believe it to be true. The reason this Affirmation is made by me and not by the Petitioner is because the Petitioner's place of business is in a county different from the one in which your deponent maintains his office.

PAUL S. LINZER

13